**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **WANDA PRUETT** | * | **CIVIL ACTION NO.  18-0203** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **IBERIABANK** | * | **MAG. JUDGE KAREN L. HAYES** |

<u>**REPORT AND RECOMMENDATION**</u>

Before the undersigned magistrate judge, on reference from the District Court, is a motion to dismiss and compel arbitration [doc. # 5] filed by Defendant, IBERIABANK.  For reasons stated below, it is recommended that the motion to compel be **GRANTED**, that the motion to dismiss be **DENIED** and that the case be **STAYED** pending the outcome of arbitration.

On April 19, 2018, Defendant filed the instant motion.  Defendant asserts that Plaintiff's claims are subject to an arbitration agreement previously executed by the parties.  *See* Motion, doc. # 5.  Defendant asks the Court to dismiss this action, and order that Plaintiff may only pursue her claims through arbitration.

On May 14, 2018, Plaintiff filed her response to the instant motion [doc. # 8].  Plaintiff does not dispute that the bulk of her claims must be submitted to arbitration, but asks the Court to stay, rather than dismiss, the instant law suit.  On May 16, 2018, Defendant filed a reply [doc. # 9] arguing that dismissal was the appropriate remedy where all Plaintiff's claims are subject to arbitration.  This matter is now ripe.

<u>**Background**</u>

On February 2, 2015, Plaintiff began her employment with Defendant assigned to

Defendant's branch on 70th Street in Shreveport, Louisiana. *See* Complaint, doc. # 1, p. 2, ¶ 6.[1] At that time, Plaintiff and Defendant executed an Arbitration Agreement (the "Agreement"). *See* IBERIABANK Corporation Arbitration Agreement, doc. # 5-2, pp. 3-6. The Agreement's arbitration mandate encompasses "all disputes between the parties that may otherwise be brought before a court, governmental agency, or other tribunal, including but not limited to, . . . treatment by supervisors, co-workers or third-parties, . . . job assignments, and termination of employment . . . ." *Id.* at p. 3, ¶ 1(a). Specifically included in the arbitration mandate are claims for "retaliation" as well as "discrimination or harassment prohibited by applicable law, including statutory and/or common law claims of discrimination or harassment on the basis of . . . sex/gender . . ." *Id.* at p. 3, ¶ 1(b). The Agreement further provides that claims for "any form of preliminary or permanent injunctive relief" are specifically excluded from its arbitration mandate. *Id.* at p. 4, ¶ 1(c)(i).

While employed by Defendant, Plaintiff claims that she was subjected to repeated verbal sexual harassment by a co-worker. *See id.* at ¶ 7. Plaintiff reported these incidents to her supervisors, but her co-worker's harassment persisted. *See id.* at ¶¶ 8-10. Thereafter, Plaintiff was transferred to Defendant's branch on Texas Street in Shreveport, Louisiana, and her working hours were reduced. *See id.* at ¶ 11. Plaintiff's working hours were increased after she complained about the reduction. *See id.*

On September 3, 2015, Plaintiff complained to Defendant's regional office that her transfer was in retaliation for her complaint of sexual harassment and requested that she be returned to the 70th Street branch. *See id.* at ¶ 12. Defendant reassigned Plaintiff to the 70th

---

[1]Motion to dismiss so take complaint facts.

Street branch, but reduced her level of job responsibility.  *See id.* at ¶ 13.  Plaintiff's supervisors began closely scrutinizing her work.  *See id.*

Following her return to the 70th Street branch, Plaintiff overheard branch manager refer to Plaintiff as a "bitch."  *See id.* at p. 3, ¶ 15.  Plaintiff complained to the branch manager's supervisor about this incident.  *See id.* at ¶ 15.  Thereafter, Plaintiff's supervisors increased their scrutiny of her work.  *See id.* at ¶ 16.

On March 2, 2016, Defendant terminated Plaintiff's employment.  *See id.*  Plaintiff asserts that Defendant's stated reasons for her termination were false and pretextual and that her termination was actually discriminatory and in retaliation for her previous complaints.  *See id.*

Plaintiff filed this suit on February 16, 2018, seeking declaratory, injunctive, and monetary relief for sexual harassment, employment discrimination, and retaliation in violation of federal and state law.

## Law and Analysis

The Federal Arbitration Act ("FAA") applies to "any arbitration agreement within the coverage of the Act" which includes written agreements to arbitrate if the contract "evidenc[es] a transaction involving commerce."  *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 654-56 (5th Cir. 2000) (quoting, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 103 S.Ct. 927 (1983) and 9 U.S.C. § 2).  The FAA applies to employment contracts.  *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996)

The FAA "provides that pre-dispute arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Carter v. Countrywide Credit Industries, Inc.*,  362 F.3d 294, 297 (5th Cir. 2004)

(quoting 9 U.S.C. § 2).  The FAA was designed to ensure that arbitration agreements are treated the same as any other contractual provision.  *Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 247-49 (5th Cir. 1998) (citations omitted).  Indeed, § 2 of the FAA

> creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts "to place such agreements upon the same footing as other contracts."  Section 3, in turn, allows litigants already in federal court to invoke agreements made enforceable by § 2. That provision requires the court, "on application of one of the parties," to stay the action if it involves an "issue referable to arbitration under an agreement in writing."

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630, 129 S. Ct. 1896, 1901-02 (2009) (citations omitted).

Courts undertake a two-step inquiry when considering arbitration provisions. *Washington Mut. Fin. Group v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004).  The first step is to ascertain whether the parties agreed to arbitrate the dispute.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626, 105 S. Ct. 3346, 3353 (1985).  If this question is answered affirmatively, then the court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."  *Id*.

The agreement to arbitrate inquiry is further subdivided into two considerations:  "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996).  In answering the first question, the courts apply "ordinary state-law principles that govern the formation of contracts."  *Graves v. BP Am., Inc.*, 568 F.3d 221, 222-24 (5th Cir. 2009) (citations omitted).  In contrast, the courts gauge the scope of the parties' agreement "by applying the federal substantive law of arbitrability . . . ."  *Id*. (citations and internal quotation marks omitted).  Furthermore, although "ambiguities ... [are] resolved in favor

4

of arbitration," with regard to the latter inquiry, the federal policy favoring arbitration does not apply to the determination of whether the parties confected a valid agreement to arbitrate. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 *opinion supplemented on denial of reh'g,* 303 F.3d 570 (5th Cir. 2002) (quoted source omitted).

Any doubts concerning whether a dispute is covered by the scope of an arbitration agreement should be resolved in favor of arbitration. *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009), *cert. dismissed sub nom., KBR Technical Services Inc. v. Jones*, 559 U.S. 998, 130 S. Ct. 1756 (2010) (citations omitted). Accordingly, the Fifth Circuit has held that "a valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id*. (citations and internal quotation marks omitted). Furthermore, "[w]hen deciding whether a claim falls within the scope of an arbitration agreement, courts focus on factual allegations in the complaint rather than the legal causes of action asserted." *Id*. (citation and internal quotation marks omitted).

Here, Plaintiff concedes that the Agreement's arbitration mandate covers the bulk of her claims. *See* Response, doc. # 8. Upon reviewing the Agreement and the Complaint, the undersigned agrees. Accordingly, the undersigned concludes that the Court should grant Defendant's motion to compel arbitration.

Defendant has also moved the Court to dismiss this action, arguing that all of Plaintiff's claims are subject to arbitration. *See* Reply, doc. # 9. Plaintiff responds that the Court should stay, rather than dismiss, this action. *See* Response, doc. # 8. Section 3 of the FAA provides:

> for a stay of legal proceedings whenever the issues in a case are within the reach
> of an arbitration agreement. This provision is mandatory: If the issues in a case

5

are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay.

*In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (citations and internal quotation marks omitted).  However, the Fifth Circuit has held that, where *all* issues raised in the matter are subject to mandatory arbitration, the Court may enter a dismissal rather than stay the action.  *See Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, n. 9 (5th Cir. 2003) (discussing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir.1992).

In the Complaint, Plaintiff prays for the Court to "order Defendant to cease the discriminatory/retaliatory practices," "enjoin Defendant from engaging in further discrimination/retaliation against Plaintiff," and  "order Defendant to rehire Plaintiff."  *See* Complaint, doc. # 1, p. 4, ¶¶ (A), (B), and (D).  These are claims for injunctive relief, which are specifically excluded from the arbitration mandate in the Agreement.  *See* IBERIABANK Corporation Arbitration Agreement, doc. # 5-2, p. 4, ¶ 1(c)(i).  For this reason, the undersigned concludes that the Court should stay this action pending the outcome of arbitration rather than granting Defendant's motion to dismiss.

### Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the motion to compel arbitration [doc. # 5] filed by Defendant be **GRANTED**.

IT IS FURTHER RECOMMENDED that the matter be **STAYED** pending arbitration, subject to the parties' obligation to file a joint status report with the court every six months.

IT IS FURTHER RECOMMENDED that the motion to dismiss [doc. # 5] filed by Defendant be **DENIED**.

6

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 31st day of May 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE